**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GLOBAL TRADEMARKS, INC. et al,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**LIMING ZHAO, et al.,**<br><br>**Defendants.** | **Civil Action No. 24-7273 (MEF) (MAH)**<br><br><br>**OPINION** |

### I.      INTRODUCTION

Presently before the Court is Plaintiffs' motion for alternative service of process and an enlargement of time to serve Defendant Zhong Wang ("Wang") under Federal Rules of Civil Procedure 4(e) and (m).  Mot. for Alternative Service, Feb. 3, 2026, D.E. 96.  The other defendants, who have already been served, oppose the motion and Plaintiffs filed a reply.  Defs.' Opp'n, Feb. 17, 2026, D.E. 99; Pls.' Reply, Feb. 23, 2026, D.E. 100.  The Undersigned has considered this matter without oral argument.  Fed. R. Civ. P. 78; Local Civ. R. 78.1.  For the reasons set forth below, SWIM USA's motion is **GRANTED IN PART** and **DENIED IN PART**.

### II.     BACKGROUND

On July 25, 2025, Plaintiffs Global Trademarks, Inc. ("Global Trademarks"), A&H Sportswear Co., Inc., Mainstream Swimsuits, Inc., and Miracle Ventures, Inc. (collectively, "Plaintiffs" or "Swim USA") filed an Amended Complaint[1] against Defendants Liming Zhao

---

[1]  The initial complaint was filed only by Global Trademarks and did not include as defendants Shake World or Wang.  *See* Compl., June 26, 2024, D.E. 1.

("Zhao"), Nanjing Kapeixi Network Technology Co., Ltd. d/b/a Cupshe ("Cupshe"), Nanjing

Niuli Garment Trading Co., Ltd., Sparky Worldwide Inc., Summer Vibe Inc., Shake World LLC

("Shake World"), and Wang (collectively "Defendants") bringing various patent infringement

and trademark claims.  Am. Compl., July 25, 2025, D.E. 50.  Swim USA designs and sells

swimwear.  *Id.* ¶ 25.  Swim USA accuses Defendants of selling swimwear that infringes on

Swim USA designs both through Cupshe's website and through third-party retailers.  *Id.* ¶¶ 93-

94.  Swim USA seeks damages and declaratory relief.

Swim USA alleges that Shake World is a New Jersey limited liability company with a

principal place of business at 87B, N. Beverwyck Road, Unit # 1014, Lake Hiawatha, New

Jersey (the "Lake Hiawatha address").  *Id.* ¶ 19.  Swim USA also alleges that Wang is an

individual with that same Lake Hiawatha address.  *Id.* ¶ 20.  However, since at least July 10,

2025, Plaintiffs have known of a personal address associated with Wang at Rank 8 RM#3, Xin

Kai Road, Kai Ping District, Tang Shang City, He Bei, China (the "Chinese address").  Ex. 1

("Shake World Status Report"), D.E. 96-2.  Upon information and belief, Swim USA alleges that

"defendant Zhao is an owner and founder of defendant Shake World, together with defendant

Wang, he exercises complete control."  *Id.* ¶ 21.  According to SWIM USA, Shake World sells

and markets the infringing swimwear, which it stores at a location in New Jersey.  *Id.* ¶¶ 87-88.

All Defendants, except for Shake World and Wang, waived service of process in August

2025.  Waiver of Service, Aug. 11, 2025, D.E. 63; Waiver of Service, Aug. 11, 2025, D.E. 64,

Waiver of Service, Aug. 11, 2025, D.E. 65, Waiver of Service, Aug. 11, 2025, D.E. 66.

On August 25, 2025, a process server unsuccessfully attempted to personally serve both

Shake World and Wang at the Lake Hiawatha address.  *See* D.E. 68; D.E. 69.  The process server

reported that the address was a mailbox store and the clerk: (1) refused to confirm or deny if

Wang held mailbox #1014, (2) refused to accept service of process on behalf of Wang, and (3) stated Wang had no offices there.  D.E. 69.  On September 4, 2025, after the process server's failed attempt at the Lake Hiawatha address, the process server successfully served Shake World through the New Jersey Secretary of State, pursuant to N.J.S.A. 2A:15-30.1.  Aff. of Service, Sept. 9, 2025, D.E. 72.  On September 11, 2025, Plaintiffs' counsel inquired whether defense counsel would accept service on Wang's behalf.  Defense counsel declined on September 15, 2025.  Massoud Cert., D.E. 96-1 ¶¶ 20-21.

After several stipulations and orders granting extensions, Defendants, except for Wang, answered the amended complaint on December 5, 2025.  Answer, D.E. 87.  Defendants bring counterclaims that seek declaratory judgments stating that the patents are invalid and/or that Defendants did not infringe on those patents.  *See id.* ¶¶ 63-74.

Shake World admitted that it is a New Jersey limited liability company with a principal place of business at the Lake Hiawatha address.  *Id.* ¶ 19.  Shake World, however, denied having any knowledge of Wang's address.  *Id.* ¶ 20.  Defendants denied that Zhao and Wang exercise complete control of Shake World.  *Id.* ¶ 21.  Swim USA answered the counterclaims on December 18, 2025.  Pl.'s Answer, D.E. 93.  Plaintiffs had still not served Wang.

On February 3, 2026, Swim USA filed the instant motion.  Mot. for Alternative Service, D.E. 96.[2]  Swim USA urges the Court to both (1) grant an extension of time to serve Wang under Rule 4(m), and (2) permit service by mail under Rule 4(e)(1).  Pl.'s Br., Feb. 3, 2026, D.E. 96-8.  Swim USA also requests that the Court deem prior attempts to serve Wang by mail "to be good and effective service herein."  *Id.*  Swim USA asserts that Wang could properly be served at the

---

[2]  Swim USA also filed a certification on January 21, 2026 containing many of the same exhibits that are attached to the instant motion.  Certification, D.E. 94.  Because the certification contained no affirmative request for relief, the Court took no action at that time.

Lake Hiawatha address because he was the agent authorized to accept service on behalf of Shake World at that address. *Id.* at 3. Swim USA additionally asserts it demonstrated due diligence in attempting to serve Wang at that address based on a process server's unsuccessful attempt and counsel's separate attempt to serve copies of the complaint by regular and certified mail. *Id.* Swim USA contends that it waited so long to seek an extension of time to serve Wang because it was hopeful that defense counsel, who is representing the other Defendants, would also accept service of process on behalf of Wang. *Id.* at 7. Additionally, because the parties were pursuing a global settlement, Swim USA was hopeful that the litigation could resolve before resorting to the instant motion practice. *Id.* Swim USA acknowledges that it never attempted to serve Wang at the Chinese address, reasoning that any effort to do so would be costly, time-consuming, and likely futile. *Id.* at 12.

Defendants oppose the motion. Defs.' Opp'n, D.E. 99. Defendants argue that an extension of time to serve Wang is not warranted because Swim USA "failed to demonstrate good cause for their untimely filing." *Id.* at 4. Defendants assert that Swim USA did not diligently attempt to locate and serve Wang. *Id.* at 6, 13. Defendants emphasize that, despite knowing of Wang's Chinese address before filing the amended complaint, Swim USA has never attempted to serve Wang at that Chinese address. *Id.* at 14.

The Court convened a conference with the parties on May 15, 2026 to discuss whether the parties would agree to stipulate, without prejudice, the dismissal of Shake World and Wang until a later date. Text Order, D.E. 105. The parties did not agree to a stipulation of dismissal. Letter, May 22, 2026, D.E. 106. Accordingly, the motion is fully briefed and ripe for review.

4

### III.    DISCUSSION

#### a.  Alternative Service

Federal Rule of Civil Procedure 4(e) governs service of process on individual defendants and provides that:

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
>     (A) delivering a copy of the summons and the complaint to the individual personally;
>     (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of a suitable age and discretion who resides there; or
>     (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).  Pursuant to New Jersey law, personal service is the primary and preferred method to serve an individual defendant located within the state.  N.J. Ct. R. 4:4-4(a).  However, when personal service cannot be effectuated in accordance with N.J. Ct. R. 4:4-4(a), New Jersey law allows for substitute modes of service by mail or by personal service outside the state.  N.J. Ct. R. 4:4-4(b)(1)(A)-(C).  For service by mail, a plaintiff may obtain *in personam* jurisdiction over a competent individual over the age of 14, by "mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and simultaneously, by ordinary mail . . . to the individual's dwelling house or usual place of abode," only if the plaintiff shows that personal service was not possible "despite diligent effort and inquiry."  N.J. Ct. R. 4:4-4(b)(1)(C).  This showing must be made by affidavit "fully specifying the inquiry made, of

what persons and in what manner, so that by the facts stated therein it may appear that diligent inquiry has been made for the purpose of effecting actual notice." N.J. Ct. R. 4:4-5(b).

If service cannot be made in accordance with paragraphs (a) or (b)(1), "[a]n affidavit of diligent inquiry is required to disclose the efforts made to ascertain the defendant's whereabouts." *Modan v. Modan*, 327 N.J. Super. 44, 47 (App. Div. 2000). The diligence exercised and the alternative service requested must meet the constitutional requirements of due process provided that "notice [be] reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See O'Connor v. Altus*, 67 N.J. 106, 126-27 (1975) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)) (holding that the proposed means of alternative service must comport with constitutional notions of due process). "[T]here is no objective formulaic standard for determining what is, or is not, due diligence. Instead . . . due diligence is measured by the qualitative efforts of a specific plaintiff seeking to locate and serve a specific defendant." *Modan*, 327 N.J. Super. at 48 (internal citation and quotations omitted); *see also J.C. v. M.C.*, 438 N.J. Super. 325, 331 (Ch. Div. 2013) (holding that to show due diligence, a plaintiff must demonstrate a good faith effort to locate a defendant).

Federal, rather than New Jersey, law controls when serving individuals located in foreign countries. "Federal Rule of Civil Procedure 4(f) governs service of process upon individuals in foreign counties." *Vanderhoef v. China Auto Logistics Inc.*, No. 18-10174, 2019 WL 6337908, at *2 (D.N.J. Nov. 26, 2019). "Unless federal law provides otherwise, an individual . . . may be served at place not within any judicial district of the United States . . . by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." Fed. R. Civ. P. 4(f)(1).

Thus, Rule 4(f) "governs service of process on defendants in foreign countries and sets forth three potential methods for service:  (1) under the Hague Convention or other applicable international agreement; (2) in the absence of limitations under an international agreement, as a foreign country's law prescribes or permits or as directed by a foreign authority; or (3) by other means not prohibited by international agreement, as directed by the Court."  *Celgene Corp. v. Blanche Ltd.*, No. 16-501, 2017 WL 1282200, at *2 (D.N.J. Mar. 10, 2017).  The proposed method of alternative service must comport with notions of due process.  *Heredia v. Transp. S.A.S., Inc.*, 101 F. Supp. 2d 158, 162 (S.D.N.Y. 2000).  "The district court maintains the discretionary authority to determine whether the particularities and necessities of a case warrant alternative service."  *Vanderhoef*, 2019 WL 6337908, at *2.

"[F]ederal courts have permitted alternative means of service in cases where it would be 'futile' to attempt to comply with Hague Convention[3] approved means of service."  *SEC v. Dubovoy*, 15-6076, 2016 WL 7217607, at *2 (D.N.J. Dec. 13, 2016).  But "[t]he Third Circuit has not addressed whether service under the Hague Convention is the only possible avenue of service where a country is a signatory to the Convention."  *DUSA Pharms, Inc. v. Biofrontera Inc.*, No. 23-20601, 2024 WL 4151169, at *3 (D.N.J. 2024) (holding that subsections (1), (2), and (3) of Rule 4(f) "each provide independent and sufficient bases for service").  "Service pursuant to Rule 4(f)(3) is 'neither a last resort nor extraordinary relief . . . . It is merely one means among several which enables service of process on an international defendant.'"  *Knit*

---

3  "The Hauge Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("the Hague Convention") is an international agreement that sets out the means of process for foreign defendants in international civil suits."  *Celgene Corp.*, 2017 WL 1282200, at *2 n.2.

*With v. Knitting Fever, Inc.*, Nos. 08-4221, 08-4775, 2010 WL 4977944, at *3 (E.D. Pa. Dec. 7, 2010) (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)).

"China is a signatory to the Hague Convention." *RJ Brands, LLC v. Hangdong Trading Ltd.*, No. 21-4747, 2021 WL 3206813, at *3 (D.N.J. July 28, 2021). "Pursuant to the Convention, service can be effected in China through the Chinese Central Authority." *In re LDK Solar Sec. Litig.*, No. 07-5182, 2008 WL 2415186, at *1, *3 (N.D. Cal. June 12, 2008). At the same time, "China is one of many signatories to the Hauge Convention that has expressly objected to the service provisions in Article 10, including service through postal mail." *Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co., Ltd.*, 494 F. Supp. 3d 404, 413 (N.D. Tex. 2020).

"Although alternative service under rule 4(f)(3) 'is equal to other forms of service,' the plaintiff should still show some difficulty in effecting service by normal means." *Celgene Corp.*, 2017 WL 182200, at *2 (quoting *Bravetti v. Liu*, No. 12-7492, 2013 WL 6501740, at *3-4 (D.N.J. Dec. 11, 2013)); *see also DUSA Pharms.*, 2024 WL 4151169, at *3 (finding that demonstrating "some measure of difficulty in effective service by usual means" is helpful for a plaintiff's motion for alternative service, even when the court did not require plaintiff to make that showing). Accordingly, courts may grant alternative service motions under Rule 4(f) "when the movant has shown that there is no international agreement prohibiting service by the proposed method, that the proposed method of service is reasonably calculated to provide the defendant notice, and that the movant has made a good faith effort to locate the defendant." *Celgene Corp.*, 2017 WL 1282200, at *2. Furthermore, the Hague Convention does not necessarily "prohibit[] domestic service on . . . foreign defendants." *DUSA Pharms.*, 2024 WL 4151169, at *4.

If Wang was located in New Jersey, Swim USA's December 26, 2025, mailing to the Lake Hiawatha address might constitute effective alternative service under N.J. Ct. R. 4:4-3(a). After all, Wang designated himself as Shake World's registered agent at that address in April 2025, D.E. 96-3, the Lake Hiawatha address is Shake World's principal place of business, Answer, D.E. 87 ¶ 19, and the regular mail was never returned, Massoud Cert. ¶ 29. But the Court cannot glean from the record that Wang was physically present in New Jersey during the service attempts of either the process server or counsel. In fact, SWIM USA knew following the process server's unsuccessful August 25, 2025 service attempt that Wang did not maintain an office at the Lake Hiawatha address. D.E. 69. There is no evidence that Wang has been physically present in New Jersey at any point during this litigation. The Court gathers from the record that Wang might have been in China throughout this litigation. Indeed, SWIM USA knew of the Chinese address when amending the complaint and bringing Shake World and Wang into the action. Massoud Cert. ¶ 11, n.2.

Since Wang appears to be located abroad, Federal Rule of Civil Procedure Rule 4(f)(3), rather than the New Jersey court rules, governs alternative service. To obtain alternative service under Rule 4(f)(3) in lieu of Hague Convention service, it is helpful that a plaintiff demonstrates that conventional means of foreign service would be futile. *Dubovoy*, 2016 WL 7217607, at *2. But Swim USA has never attempted to serve Wang under the Hague Convention. Rather, Swim USA's futility argument appears to rest on a footnote in the Massoud Certification reporting that, before the Complaint was filed, process servers advised that Hague service in China would be costly and time consuming. Massoud Cert. ¶ 11 n.2. Without even attempting to serve Wang under the Hague Convention, this assertion is insufficient to demonstrate futility. *See U.S. ex rel. Thomas v. Siemens AG*, 708 F. Supp. 2d 505, 523 (E.D. Pa. 2010) (declining to permit plaintiff

to circumvent Hague Convention requirements where no good faith effort to serve through proper channels had been made).

As noted above, courts in this District have held that Hague Convention service is not necessary if a plaintiff instead serves a foreign defendant via domestic means.  But even if SWIM USA's proposed alternative service were legally permissible, "the Court believes it prudent to permit the Hague Convention process to play out a bit more."  *DUSA Pharms.*, 2024 WL 4151169, at *7.  Although serving Wang through the Hague Convention process can potentially delay these proceedings, that delay would be minimal.  After all, the Court only recently entered a pretrial scheduling order in this case.  *See* Pretrial Scheduling Order, Feb. 17, 2026, D.E. 98.  Though the fact discovery deadline is currently set for February 2027, the Court finds it likely that modifications to the scheduling order will be necessary whether Wang appears in this action now or months from now.  "The result is that no undue prejudice will result to the parties from permitting" SWIM USA to serve Wang under the Hague Convention.  *DUSA Pharms.*, 2024 WL 4151169, at *7.

Accordingly, the Court denies without prejudice SWIM USA's request to find that service has been executed at this time.[4]  Having found that SWIM USA has failed to timely serve Wang, the Court now turns to "whether an extension of time for service is warranted."  *Gonzalez v. Thomas Built Buses, Inc.*, 268 F.R.D. 521, 526 (M.D. Pa. 2010) (analyzing Rule 4 under its previous language, which allowed a plaintiff 120 days, rather than 90, to serve process).

---

[4] The court's "prudential concerns, however, will not last forever, and soon enough will yield to the need to the need to move this case forward expeditiously."  *DUSA Pharms.*, 2024 WL 4151169, at *7.

10

**b. Extension of Time to Serve**

Federal Rule of Civil Procedure 4(m) provides that:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A).

Fed. R. Civ. P. 4(m). The Third Circuit "has set forth a two-pronged standard of review to determine whether granting an extension of time to serve is proper under Rule 4(m), which provides for both mandatory and discretionary extensions." *Gonzalez*, 268 F.R.D. at 526. The Court addresses the mandatory and discretionary extensions separately herein.

**i. Mandatory Extension for Good Cause**

First, the Court analyzes whether good cause exists for Plaintiffs' failure to effect service of process within the 90-day time limit. "If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995).

In assessing whether a plaintiff has demonstrated good cause warranting a mandatory extension of time to serve, the Third Circuit has advised that a Court should consider the "(1) reasonableness of plaintiff's efforts to serve; (2) prejudice to the defendant by lack of timely service; and (3) whether plaintiff moved for an enlargement of time to serve." *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995). The Court's analysis should mainly focus on whether a plaintiff has demonstrated "good faith" in requesting the extension

and whether there is "some reasonable basis for noncompliance within the time specified in the rule." *Id.* (citing *Petrucelli*, 46 F.3d at 1312). The Third Circuit has also instructed that while prejudice to defendant "may tip the 'good cause' scale, the primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *Id.*

Failing to move for an extension of time to serve after the 90 days proscribed by Rule 4(m) "weighs heavily against a finding of good cause." *Barrentine v. N.J. Transit*, No. 12-3936, 2013 WL 4606781, at *7 (D.N.J. Aug. 28, 2013); *see also Gonzalez*, 268 F.R.D. at 527 ("[F]or . . . the good cause analysis to be met, a plaintiff must move for an extension before the expiration of" Rule 4's deadline).

As will be discussed in the next section, the Court finds that Plaintiffs' efforts to serve Wang were quite reasonable and that Defendants will not be significantly prejudiced if the Court grants an extension of time to serve him. However, Plaintiff failed to move for an extension of time to serve process within the time limits proscribed by Federal Rule of Civil Procedure 4(m). So the Court cannot grant a mandatory extension under the Rule.

Here, Plaintiffs filed the amended complaint naming Wang as a defendant on July 25, 2025. D.E. 50. But Plaintiffs did not file the instant motion until February 3, 2026. D.E. 96. That timeframe is well beyond the 90 days that Rule 4 allows, especially considering Plaintiff's counsel knew as of September 15, 2025 that defense counsel would decline to accept service of process on behalf of Wang. *See* Massoud Cert., D.E. 96-1 ¶¶ 20-21. Even assuming that there is no prejudice to any of the Defendants if the Court were to grant an extension of time to serve, lack of prejudice alone does not constitute good cause. *See MCI Telecomm. Corp.*, 71 F.3d at 1097 (finding the "absence of prejudice alone can never constitute good cause to excuse late service"). Because the Court finds that Plaintiffs have failed to satisfy their burden of

demonstrating good cause for the failure to serve Wang within the 90-day time limit proscribed by Rule 4(m), Plaintiffs are not entitled to a mandatory extension of time to service process.

### ii. Discretionary Extension of Time

In the absence of good cause, the Court must turn to the second step of the inquiry and decide whether to grant a discretionary extension of time. *Petrucelli*, 46 F.3d at 1306. In deciding whether to exercise this discretion, courts have taken into account factors such as the length of the delay, the role of counsel, expiration of applicable status of limitations, prejudice to the defendant, and the conduct of the parties, among other considerations. *Barrentine*, 2013 WL 4606781, at *7. A court may also "consider actual notice of the legal action" when deciding whether to grant an extension or dismiss the complaint. *Chiang v. U.S. Small Bus. Admin.*, 331 F. App'x 113, 116 (3d Cir. 2009). Indeed, the Court has "wide discretion in deciding whether to extend time for service under Rule 4(m)." *Gonzalez*, 268 F.R.D. at 528.

Based on the peculiar circumstances of this case, the Court finds it is appropriate to grant Plaintiffs a discretionary extension of time to effect service on Wang. First, Plaintiffs diligently searched multiple databases and found no domestic address for Wang other than the Lake Hiawatha address. Massoud Cert. ¶ 7. It appears Wang himself filed a Change of Registered Agent Certificate designating that address in April 2025, five months before the first service attempt. D.E. 96-3. The Court finds it was reasonable for Plaintiffs to attempt to serve Wang using the only domestic address associated with him, especially considering that, theoretically, Wang should receive mail at that address, albeit on behalf of Shake World. After all, "due diligence does not require a plaintiff to 'take every conceivable action' to locate a defendant." *Nabi v. Childs*, No. 19-12872, 2019 WL 5800254, at *2 (D.N.J. Nov. 7, 2019) (quoting *Guardian Life Ins. Co. of Am. v. Crystal Clear Indus.*, No. 11-3062, 2012 WL 1884003, at *5

13

(D.N.J. 2012)).  The Court finds that Plaintiffs reasonably targeted the only domestic address Wang himself publicly and recently designated.

Additionally, the parties were engaged in active settlement discussions through at least early December 2025, and the Court granted Defendants multiple extensions to answer based on those negotiations.  *See* D.E. 84; D.E. 86.  Plaintiffs reasonably delayed the instant motion practice with the hope that the case would otherwise be amicably resolved.  Massoud Cert. ¶ 31.  Indeed, as of November 4, 2025, the parties were still "engaged in good-faith negotiations to achieve an out-of-court resolution of this matter."  Stipulation, D.E. 84.  Although Plaintiffs technically did not move for an extension of time to serve process within the 4(m)'s proscribed time limit, considering that the parties were still attempting to settle the case as of that date, Plaintiffs did file the instant motion within 90 days of the settlement talks becoming unsuccessful.

The Court also finds that it is extremely likely that Wang has actual notice of the suit.  After all, Wang is the registered agent, managing member, and director of Shake World.  Shake World has answered, filed counterclaims, and is litigating through the same counsel who filed the opposition brief to this motion.  Answer, D.E. 87; Defs.' Opp'n, D.E. 99.  It strains credulity to believe that an entity can be actively engaged in litigation without the knowledge of its registered agent, managing member, and director.  That is particularly so here, because a copy of the complaint and summons was delivered to the Lake Hiawatha address where Wang, as Shake World's registered agent, is authorized to accept service of process on behalf of Shake World.

Finally, courts have held that "prejudice 'involves impairment of defendant's ability to defend on the merits, rather than foregoing such a procedural or technical advantage.'"  *Boley v. Kaymark*, 123 F.3d 756, 759 (3d Cir. 1997) (quoting *Nat'l Union Fire Ins. Co. v. Barney*

*Assocs.*, 130 F.R.D. 291, 294 (S.D.N.Y. 1990)).  The same prudential concerns noted above ring true here.  Neither Wang nor the already-served Defendants would be prejudiced in their ability to defend against the claims on the merits if the Court were to grant SWIM USA an extension of time to effect service on Wang.  Discovery in this matter has not begun in any substantial degree.  Additionally, it is highly likely that any discovery produced by Shake World will significantly overlap with any discovery Wang could produce.  Discovery can proceed, and once Plaintiffs successfully serve Wang, he can seamlessly integrate into the case.

The Third Circuit has a "preference for deciding cases on their merits, rather than through procedural technicalities." *Gonzalez*, 268 F.R.D. at 528.  Despite Plaintiffs' lack of attempt to serve Wang at the Chinese address, considering the peculiar circumstances of this case, Plaintiffs otherwise acted reasonably in their attempt to serve Wang at the Lake Hiawatha address.  Accordingly, Plaintiffs shall attempt to serve Wang at the Chinese address under the Hague Convention.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs' motion for alternative service of process is **DENIED** and Plaintiffs' motion for an enlargement of time to serve Wang is **GRANTED**.  Plaintiffs shall serve Wang pursuant to the Hague Convention.  All other deadlines set forth in the Pretrial Scheduling Order remain in full force and effect.  Plaintiffs may renew the motion for alternative service under Rule 4(f)(3) if traditional service pursuant to Rule 4(f)(1) and the Hague Convention has not been effected by November 1, 2026.  The Court will issue an accompanying Order.

*s/ Michael A. Hammer*_____
**Hon. Michael A. Hammer,**
**United States Magistrate Judge**

**Dated**:  July 1, 2026